UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE GEO GROUP, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>JAY INSLEE, in his official capacity as Governor of the State of Washington; BOB FERGUSON, in his official capacity as the Attorney General of the State of Washington; and MARY ROBNETT, in her official capacity as the Prosecuting Attorney for Pierce County, Washington,<br><br>                    Defendants. | No. 21-5313_____<br><br>**COMPLAINT** |

1.      Plaintiff The GEO Group, Inc. ("GEO") brings this action for declaratory and injunctive relief against Defendants Governor Jay Inslee, Attorney General Bob Ferguson, and Pierce County Prosecuting Attorney Mary Robnett regarding Washington Engrossed House Bill 1090 (EHB 1090).

2.      Through EHB 1090, the State of Washington (the "State") asserts the power to shut down the Federal Government's only dedicated immigration detention facility in the State, thereby subverting the congressionally funded and approved enforcement of federal immigration law by U.S. Immigration and Customs Enforcement (ICE) within the State of Washington. GEO operates this 1,575-bed immigration detention facility under contract with ICE.

3.      Two hundred years ago, in the foundational case of *McCulloch v. Maryland*, Chief Justice John Marshall invoked the "great principle" that "the constitution and the laws made in

COMPLAINT - 1

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1   pursuance thereof are supreme; that they control the constitution and laws of the respective states,

2   and cannot be controlled by them." 17 U.S. (4 Wheat.) 316, 426 (1819). This principle "so entirely

3   pervades the constitution, is so intermixed with the materials which compose it, so interwoven

4   with its web, so blended with its texture, as to be incapable of being separated from it, without

5   rending it into shreds." *Id.* Based on this bedrock precept—derived from the Supremacy Clause of

6   the United States Constitution—it has been incontestable from *McCulloch* onward that "the

7   activities of the Federal Government are free from regulation by any state." *Hancock v. Train*,

8   426 U.S. 167, 178 (1976) (quotation marks omitted).

9         4.      And just as the activities of the Federal Government may not be directly regulated

10   by any state, "[t]he government of the United States, . . . though limited in its powers, is supreme;

11   and its laws, when made in pursuance of the constitution, form the supreme law of the land,

12   'anything in the constitution or laws of any state to the contrary notwithstanding.'" *McCulloch*,

13   17 U.S (4 Wheat.) at 406; *see also Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824) (Marshall,

14   C.J.) (explaining that the Supremacy Clause ensures that States not enact laws that "interfere with,

15   or are contrary to the laws of Congress"). This power of Congress to preempt inconsistent state

16   laws is, like the Federal Government's immunity from state regulation, a "fundamental principle

17   of the Constitution." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

18         5.      Like the State of Maryland two hundred years ago, the State of Washington seeks

19   to subvert these principles, asserting the authority to regulate and undermine the United States

20   Government in the exercise of sovereign powers undoubtedly within the supreme sphere of federal

21   action. Even more egregiously, the State asserts the authority to do so by retroactively abrogating

22   a contract between the Federal Government and GEO. As it was two hundred years ago, it is the

23   duty of the federal courts to guard our constitutional order against this attack.

24         6.      There is no question that the Federal Government has the power to detain

25   individuals in anticipation of, or as a consequence of, federal immigration proceedings. *See, e.g.*,

26   *Wong v. United States*, 163 U.S. 228, 235 (1896). Nor is there any question that the Federal

27   Government has the authority to contract with private entities with expertise in the operation of

COMPLAINT - 2

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

detention facilities to carry out its detention responsibilities. And, indeed, Congress has enacted statutes that clearly authorize the Executive Branch to house federal detainees in private facilities as that Branch deems appropriate. *See, e.g.*, 6 U.S.C. § 112(b)(2); 8 U.S.C. § 1231(g); 18 U.S.C. § 4013 note "Contracts for Space or Facilities"; 28 U.S.C. § 530C(a)(4). Yet, under the recently enacted EHB 1090, it is illegal for the Federal Government to enter into or renew such contracts for facilities in the State of Washington. This transparent attempt by the State to shut down the Federal Government's detention efforts within Washington's borders is a direct assault on the supremacy of federal law, and it cannot stand.

7.      GEO, as the operator of the only federal detention facility threatened by the State, brings this action to reassert the foundational principles laid down in *McCulloch v. Maryland* two centuries ago. This Court should declare EHB 1090 unconstitutional and enter a preliminary and permanent injunction restraining Defendants from enforcing the statute against GEO.

**JURISDICTION & VENUE**

8.      GEO seeks relief on all claims pursuant to 28 U.S.C. §§ 2201, 2202, and 2412. Additionally, on its Contracts Clause claim, GEO seeks relief pursuant to 42 U.S.C. § 1983.

9.      This Court has jurisdiction under 28 U.S.C. § 1331 because the questions of whether EHB 1090 violates the Supremacy Clause of the United States Constitution, whether it is preempted by federal law, and whether it violates the Constitution's Contracts Clause are federal questions.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of the property that is the subject of this action is situated, in this District. GEO's Northwest Immigration Processing Center (NWIPC) is located in this District, and the effects of EHB 1090 will be felt in this District.

**THE PARTIES**

11.      Plaintiff The GEO Group, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Boca Raton, Florida.

COMPLAINT - 3

1      12.    Defendant Jay Inslee is the Governor of the State of Washington. He has "[t]he

2 supreme executive power" of the State of Washington and is charged with "see[ing] that the laws

3 are faithfully executed." WASH. CONST. art. III, §§ 2, 5. As head of the Executive Department, he

4 has a duty to "supervise the conduct of all executive and ministerial offices," WASH. REV. CODE

5 § 43.06.010(1), including the Attorney General, *see id.* § 43.06.010(5)–(7); *accord* WASH. CONST.

6 §§ 1, 5. In light of these duties, Governor Inslee has responsibility for enforcing EHB 1090. He is

7 sued in his official capacity.

8      13.    Defendant Bob Ferguson is the Attorney General of the State of Washington. As

9 "the attorney for state officers," *Goldmark v. McKenna*, 172 Wash. 2d 568, 570, 259 P.3d 1095,

10 1097 (2011) (en banc) (citing WASH. CONST. art. III, § 21), the Attorney General has power to

11 "[i]nstitute and prosecute all actions and proceedings for, or for the use of the state, which may be

12 necessary in the execution of the duties of any state officer," WASH. REV. CODE § 43.10.03(2). In

13 light of these duties, Attorney General Ferguson has responsibility for enforcing EHB 1090. He is

14 sued in his official capacity.

15      14.    Defendant Mary Robnett is the Prosecuting Attorney for Pierce County,

16 Washington. Under Washington law, she is charged with "[p]rosecut[ing] all criminal and civil

17 actions in which the state or the county may be a party" and "defend[ing] all suits brought against

18 the state or the county." WASH. REV. CODE § 36.27.020(4). As Prosecuting Attorney, Ms. Robnett

19 is "elected by and answerable to [her] local county . . . constituents" and is "invested by the State

20 with a limited grant of power to represent the State of Washington to enforce the laws of the State

21 within [her] county," *State v. Bryant*, 146 Wash. 2d 90, 101–02, 42 P.3d 1278, 1284 (2002)

22 (en banc). In light of these duties, Ms. Robnett has responsibility for enforcing EHB 1090. She is

23 sued in her official capacity.

24                            **FACTUAL ALLEGATIONS**

25 **I.    Engrossed House Bill 1090**

26      15.    On January 5, 2021, House Bill 1090 was introduced in the Washington

27 Legislature. On adoption of a floor amendment on February 23, 2021, the bill became Engrossed

COMPLAINT - 4

House Bill 1090.

16.      EHB 1090 adds a new chapter to Title 70 ("Public Health and Safety") of the Revised Code of Washington.

17.      After stating legislative findings, Section 2 of EHB 1090 defines two key terms:

(1) "Detention facility" means any facility in which persons are incarcerated or otherwise involuntarily confined for purposes including prior to trial or sentencing, fulfilling the terms of a sentence imposed by a court, or for other judicial or administrative processes or proceedings.

(2) "Private detention facility" means a detention facility that is operated by a private, nongovernmental for-profit entity and operating pursuant to a contract or agreement with a federal, state, or local governmental entity.

18.      In its central provision, Section 3 ("Prohibition on Private Incarceration"), EHB 1090 states:

(1) Except as provided in subsections (2) and (3) of this section, no person, business, or state or local governmental entity shall operate a private detention facility within the state or utilize a contract with a private detention facility within the state. No state or local governmental entity shall utilize a contract with a private detention facility outside of Washington state, except as provided in RCW 72.68.010(2).

(2) A private detention facility that is operating pursuant to a valid contract with a governmental entity that was in effect prior to January 1, 2021, may remain in operation for the duration of that contract, not to include any extensions or modifications made to, or authorized by, that contract.

(3) In accordance with the legislative findings in section 1 of this act, this section does not apply if the involuntary confinement is at:

(a) A facility providing rehabilitative, counseling, treatment, mental health, educational, or medical services to juveniles who are subject to Title 13 RCW, or similarly applicable federal law;

(b) A facility providing evaluation and treatment or forensic services to a person who has been civilly detained or is subject to an order of commitment by a court pursuant to chapter 10.77, 71.05, 71.09, or 71.34 RCW, or similarly applicable federal law;

(c) A facility used for the quarantine or isolation of persons for public health

COMPLAINT - 5

reasons pursuant to RCW 43.20.050, or similarly applicable federal law;

(d) A facility used for work release under chapter 72.65 RCW, or similarly applicable federal law;

(e) A facility used for extraordinary medical placement;

(f) A facility used for residential substance use disorder treatment;

(g) A facility used to house persons pursuant to 18 U.S.C. Sec. 4013; or

(h) A facility owned and operated by federally recognized tribes and contracting with a government.

19.     EHB 1090 thus amends Title 70 of the Revised Code of Washington to generally prohibit the operation of a private detention facility in the State of Washington, subject to a handful of exceptions.

20.     EHB 1090 also generally prohibits the "utiliz[ation of] a contract with a private detention facility within the state," subject to a handful of exceptions.

21.     Section 1(7) of EHB 1090 states: "[I]t is the intent of the legislature to prohibit *the use of* private, for-profit prisons and detention facilities in the state" (emphasis added). Under Section 2(2), the only entities that "use" such facilities are "federal, state, or local governmental entit[ies]."

22.     Thus, Section 3(1) "prohibit[s] the use of" private detention facilities by "federal . . . governmental entit[ies]" by prohibiting the Federal Government from "utiliz[ing] a contract with a private detention facility within the state."

23.     Notably, EHB 1090 excepts from its general prohibition "a valid contract with a governmental entity"—but only one "that was in effect prior to January 1, 2021" and only "for the duration of that contract, not to include any extensions or modifications made to, or authorized by, that contract."

24.     The Washington House rejected two separate amendments to make exceptions for federal operations from the scope of EHB 1090. H.B. 1090, H. Am. 103, https://bit.ly/3dCdY8i (striking "federal" from definition of "private detention facility") (not adopted Feb. 23, 2021);

COMPLAINT - 6

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

H.B. 1090, H. Am. 101, https://bit.ly/2P7zyrZ (exempting from HB 1090 "[a] facility in which health care services are provided by the federal government") (not adopted Feb. 23, 2021).

25.    In a Washington Senate committee hearing, the bill's primary House sponsor acknowledged that NWIPC was a "federal facility," Hear'g of Sen. Hum. Servs., Reentry & Rehabilitation Comm., https://bit.ly/3xkCuTt (Mar. 11, 2021 1:30 p.m.) (~22:56), and pointed to a U.S. Senator's related effort to "put[] a lot of pressure on the Federal Government to look at this issue," *id.* (~23:22). Similarly, in the same hearing, a Tacoma city councilmember urged that "the system is broken" and advocated "shak[ing] up the system" and "changing an immigration enforcement system" "by passing this legislation." *Id.* (~1:10:26–46). At a follow-up hearing, one State Senator brushed aside "preemption issues" while another characterized the bill as a response to a "bipartisan problem that was put upon us from the Federal Government." Hear'g of Sen. Hum. Servs., Reentry & Rehabilitation Comm., https://bit.ly/2RIfMnG (Mar. 16, 2021 1:30 p.m.) (~1:48:10–20; 1:49:26–30).

26.    Governor Inslee signed EHB 1090 into law on April 14, 2021.

**II.    U.S. Immigration and Customs Enforcement Detention Facilities**

27.    In November 2002, Congress assigned the border-enforcement functions of the former Immigration and Naturalization Service to the newly created Bureau of Immigration and Customs Enforcement, housed within the Department of Homeland Security.[1] The Bureau began operations in March 2003 and was renamed U.S. Immigration and Customs Enforcement (ICE) in March 2007.[2]

28.    Congress has authorized or required the detention of aliens under several different statutes and conditions. *See, e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), 1226(a), 1226(c); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 836–38 (2018).

29.    Congress has granted the Secretary of Homeland Security broad authority "to make contracts . . . as may be necessary and proper to carry out [his] responsibilities," 6 U.S.C.

---

[1] U.S. Immigr. & Customs Enf't, *Celebrating the History of ICE*, U.S. DEP'T OF HOMELAND SEC. (Mar. 1, 2019), https://bit.ly/35Jas68.
[2] *Id.*

COMPLAINT - 7

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

§ 112(b)(2), including contracts with private parties. Congress has also granted the Secretary authority to "carr[y] out," "in [his] reasonable discretion," the activities of ICE "through *any means*, including . . . through contracts, grants, or cooperative agreements with non-Federal parties," except to the extent that such agreements are otherwise precluded by federal law. 28 U.S.C. § 530C(a)(4) (emphasis added).

30.    Congress has also directed that "[t]he [Secretary] shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1), and it has instructed that ICE "shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for [detention]" "[p]rior to initiating any project for the construction of any new detention facility," *id.* § 1231(g)(2).

31.    Finally, in 2000, Congress enacted a statute stating: "Notwithstanding any other provision of law, . . . the [Secretary] hereafter may enter into contracts and other agreements, of any reasonable duration, for detention or incarceration space or facilities, including related services, on any reasonable basis." 18 U.S.C. § 4013 note "Contracts for Space or Facilities."[3]

32.    Thus, Congress has granted ICE, the Secretary's designee, the discretion to use private contractors to arrange for detention. *See United States v. California*, 921 F.3d 865, 882 n.7 (9th Cir. 2019).

33.    Pursuant to this authority, ICE "manages and oversees the nation's civil immigration detention system."[4]

---

[3] Although 8 U.S.C. § 1231(g), 28 U.S.C. § 530C(a), and the note accompanying 18 U.S.C. § 4013 all mention the "Attorney General," the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, transferred the immigration-enforcement functions and programs of the Immigration and Naturalization Service (INS) to the Secretary of Homeland Security, *see* 6 U.S.C. § 202(3); *id.* § 251(2); 8 U.S.C. § 1103(a)(1); provided that the Secretary "shall have all functions relating to the [INS] that any other official could by law exercise in relation to the agency immediately before such transfer," 6 U.S.C. § 551(d)(2); and specified that for those transferred functions "reference in any other Federal law to any . . . officer . . . the functions of which are so transferred shall be deemed to refer to the Secretary," 6 U.S.C. § 557. Therefore, insofar as each of the three provisions listed above relate to the immigration detention-and-removal program, their references to the "Attorney General" shall be deemed to refer to the Secretary. *See, e.g.*, *Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 208 n.* (4th Cir. 2019) (explaining that the mention of the Attorney General in 8 U.S.C. § 1231(g) shall be deemed to refer to the Secretary); *cf. Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

[4] U.S. Immigr. & Customs Enf't, *Detention Management*, DEP'T OF HOMELAND SEC. (Apr. 14, 2021), https://bit.ly/2ZvGnGO.

COMPLAINT - 8

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

34.     Whereas ICE's immigration-enforcement efforts are usually aimed at the interior of the United States, U.S. Customs and Border Protection (CBP) enforces immigration law at the border.[5]

35.     ICE's Enforcement and Removal Operations (ERO) manages a "docket of more than 3.2 million cases" of "active removal cases for aliens not in ICE custody."[6]

36.     During FY 2019 alone, "the number of individuals apprehended or found inadmissible nationwide totaled 1,148,024, an increase of 68 percent over the previous fiscal year."[7]

37.     "Typically, when an alien is apprehended by CBP, he or she is transferred to ICE custody pending removal proceedings."[8]

38.     In FY 2019, the number of book-ins to ICE facilities was 510,854,[9] yet the projected number of beds available for ICE detainees for that year was only 52,000.[10]

39.     And "[f]illing every available bed in a detention facility would necessitate housing detainees of varied threat levels together, posing serious safety concerns for detainees, officers, staff, and facility owners. ICE consequently maintains a target utilization rate of about 85 to 90% of total facility capacity," which "also allows for flexibility to respond to emergencies or other unforeseen circumstances that might require immediate availability of detention beds (e.g., charter flight cancellations, surges, or smuggling loads)."[11] In the facilities ICE currently uses, "ICE meets or exceeds its target utilization in almost every instance."[12]

40.     Thus, according to Matthew Albence, Acting Director of ICE through August 2020, "[a]t the peak of the crisis in August 2019, ERO had over 56,000 aliens in detention, and both

---

[5] STATEMENT OF MATTHEW T. ALBENCE, ACTING DIR., U.S. IMMIGRATION & CUSTOMS ENF'T, THE FISCAL YEAR 2020 PRESIDENT'S BUDGET REQUEST 3 (July 25, 2019), https://bit.ly/2Bllfp9.

[6] U.S. Immigr. & Customs Enf't, *U.S. Immigration and Customs Enforcement Fiscal Year 2019 Enforcement and Removal Operations Report* 4 & n.2, DEP'T OF HOMELAND SEC., https://bit.ly/3xbynZw.

[7] *Id.* at 3.

[8] *Id.* at 4.

[9] *Id.* at 5.

[10] *FY 2019 Budget in Brief* 4, DEP'T OF HOMELAND SEC., https://bit.ly/32yfwtK.

[11] U.S. Immigr. & Customs Enf't, *Budget Overview: Fiscal Year 2020 Congressional Justification* ICE-O&S-119, DEP'T OF HOMELAND SEC. (2019), https://bit.ly/336G3g3.

[12] *Id.*

COMPLAINT - 9

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1   ERO and CBP were forced to conduct unprecedented direct releases of hundreds of thousands of

2   aliens into the United States. During this time, ICE directly released approximately 200,00[0]

3   family unit members from custody."[13]

4         41.     Southwest land border encounters have almost *tripled* since August 2019.[14]

5         42.     Even in April 2019, ICE's ability to house detainees was "already dire,"[15] and

6   Homeland Security officials were "struggling to identify new locations where migrants can be held

7   in detention."[16]

8         43.     As of March 2020, ICE "own[ed] only five detention facilities," and "even those

9   are contractor run." [17]

10        44.     Just procuring a new ICE facility, let alone staffing and funding it, is a "years long

11  process."[18] Accordingly, "Congress made decisions many years ago. . . that contract detention

12  facilities were certainly a much more cost effective way to go with regard to detaining individuals

13  in the immigration context."[19] Moreover, during a "massive surge at the border," contractors are

14  necessary to respond effectively.[20]

15        45.     Consequently, efforts to close these private facilities have "created additional

16  expenses for [ICE]," forcing it "to increase transportation cost [and] detail person[nel] to open

17  detention facilities."[21]

18        46.     And such efforts have "had a correspondingly negative impact on . . . aliens

19  because . . . individuals that used to be kept within their communities where their families could

20  go visit them, where their attorneys could readily have access to them, [ICE] is now having to

21

22  [13] *House Appropriations Subcommittee on Homeland Security Holds Hearing on Fiscal 2021 Budget Request for Immigration and Customs Enforcement* 45 (Mar. 11, 2020), https://bit.ly/3n487vs [hereinafter *2021 ICE Budget Hearing*].

23  [14] U.S. Customs & Border Prot., *Southwest Land Border Encounters*, DEP'T OF HOMELAND SEC. (Apr. 23, 2021) (62,707 in August 2019; 172, 331 in March 2021), https://bit.ly/2Qcc4m6.

24  [15] Caitlin Dickerson, *ICE Faces Migrant Detention Crunch as Border Chaos Spills Into Interior of the Country*, N.Y. TIMES (Apr. 22, 2019), https://nyti.ms/2BEKvGS.

25  [16] *Id.*
    [17] *2021 ICE Budget Hearing* at 26.

26  [18] *Id.* at 27.
    [19] *Id.* at 26.

27  [20] *Id.* at 27.
    [21] *Id.* at 56.

COMPLAINT - 10

1    send . . . four, 500, 1,000 miles away."[22]

2    **A.    Washington's Lone Dedicated ICE Facility: Northwest ICE Processing Center**

3    47.    There is currently one dedicated ICE detention facilities in the State of Washington:

4    the Northwest ICE Processing Center (NWIPC) at 1623 East J Street, Tacoma, WA 98421,[23] with

5    a capacity of 1,575 beds.

6    48.    NWIPC is operated by GEO pursuant to a contract with ICE.

7    49.    NWIPC was built by Corrections Services Corp. under contract with the U.S.

8    Immigration and Naturalization Service (INS). It opened for operation in April 2004 under contract

9    with ICE's predecessor, the Bureau of Immigration and Customs Enforcement (the "Bureau"), to

10   house the Bureau's detainees.

11   50.    GEO acquired the facility when it acquired the Corrections Services Corp. in 2005.

12   Since the acquisition, GEO has expanded the facility, in multiple phases, up to a capacity of 1,575

13   beds.

14   51.    Since that time, GEO has housed detainees at NWIPC under contract with the

15   Bureau and—after the Bureau's renaming—with ICE.

16   52.    The current contract was signed on September 24, 2015, effective September 28,

17   2015, for a base period of one year. To extend beyond that period, the contract originally had nine

18   options of one year each and one half-year option. If all of the options were exercised by ICE, the

19   total period of performance would have lasted through March 27, 2026.

20   53.    ICE exercised its option five times, most recently on May 19, 2020, to extend the

21   contract through September 27, 2021. Then, on January 29, 2021, ICE and GEO modified the

22   contract, removing remaining unexercised option years, and establishing instead a five-year

23   performance period running from September 28, 2020, through September 27, 2025.

24   54.    Between January 2019 and April 2021, NWIPC detained an average of 837 persons

25   per day. Prior to COVID-19-related restrictions, in 2019, the average number of persons detained

26   ---

[22] *Id.* at 56.

27   [23] U.S. Immigr. & Customs Enf't, *ICE Facilities Data, FY21 YTD*, DEP'T OF HOMELAND SEC.,
https://bit.ly/3aqGSGl (linked under "Detention Statistics").

COMPLAINT - 11

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1    was 1,268 per day. Since the increase in availability of the COVID-19 vaccine, there has been an

2    upward trend in ICE populations nationwide.

3        55.    GEO has continued to operate NWIPC under the terms of the new ICE modification

4    of January 29, 2021, in much the same manner as it was operating prior to signing this

5    modification.

6    **B.    Non-Dedicated ICE Detention Facilities**

7        56.    In addition to NWIPC, the single dedicated ICE detention facility in Washington,

8    there is one other facility in Washington that, while not dedicated to ICE detention, might hold a

9    limited number of ICE detainees. The Federal Bureau of Prisons operates the Federal Detention

10   Center SeaTac at 2425 South 200th Street in Seattle, Washington 98198. That facility has a

11   maximum capacity of 900 to 1,000 inmates, but it is multi-mission, holding criminal defendants

12   pending trial or sentencing, convicted defendants serving a prison term, as well as a small number

13   of ICE detainees from time to time.[24] As of October 2018, there were *no* ICE detainees in this

14   facility,[25] and even when the facility holds detainees, it tends to hold no more than twenty

15   detainees. According to ICE leadership, the facility does not currently have beds available for ICE

16   detainees.

17       57.    Also in Washington, the Cowlitz County Juvenile Detention Center held one

18   juvenile detainee, as of February 9, 2021, but that facility has terminated its contract to hold

19   juvenile ICE detainees, effective at the beginning of April.[26]

20       58.    Absent relief from this Court, EHB 1090 will force GEO to close NWIPC. Thus,

21   under EHB 1090, there would be no dedicated ICE detention facility in the State of Washington,

22   and ICE would be forced to move detainees hundreds, if not thousands of miles away from their

23   families and friends to facilities in other states.

24

25       [24] Fed. Det. Ctr., *Inmate Admission and Orientation Handbook* 6, U.S. DEP'T OF JUST., FED. BUREAU OF
     PRISONS (Dec. 20, 2013), https://bit.ly/3n3lDQ2.

26       [25] Conrad Wilson, *ICE Appears To End Use of Federal Prisons for Immigrant Detainees*, NAT'L PUB. RADIO
     (Oct. 20, 2018), https://n.pr/3tBgKAr.

27       [26] Esmy Jimenez, *The Last Immigrant Youth Jail in the Country Moves to End Contract with ICE*,
     KUOW/NPR (Feb. 8, 2021), https://bit.ly/3dAJbc8 ("Cowlitz County's contract with ICE will end in 60 days.").

COMPLAINT - 12

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1    59.    The location nearest to NWIPC that may have available beds for ICE detainees is

2  the Yuba County Jail, in California, which is 659 miles away, by drive, and has a total capacity—

3  for county prisoners and ICE detainees alike—of roughly 430 beds,[27] 220 of which might be used

4  for ICE detainees.[28] Yuba County has faced pressure to end its contract with ICE.[29]

5  **III.    Financial Impact of EHB 1090 on GEO**

6    60.    If EHB 1090 forces GEO to close its ICE detention facility in Washington, GEO

7  would lose nearly $264 million in revenue from September 28, 2021 through September 27, 2025.

8    61.    GEO has invested almost $101 million in acquiring, constructing, outfitting, and

9  otherwise making ready for use NWIPC, all of which would be lost if GEO were no longer able to

10  use that facility for its intended purposes. The replacement cost of this detention facility is $110

11  million.

12    62.    Thus, if EHB 1090 forces GEO to close NWIPC, GEO could lose roughly $365

13  million in capital investment and future revenue over four years.

14  **COUNT I: VIOLATION OF INTERGOVERNMENTAL IMMUNITY**
**(DIRECT REGULATION OF THE FEDERAL GOVERNMENT)**

15

16    63.    Plaintiff re-alleges and incorporates by reference the allegations of the preceding

17  paragraphs.

18    64.    GEO, as a contractor for the United States, enjoys and is clothed with the Federal

19  Government's intergovernmental immunity. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174,

20  180–81 (1988); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014).

21    65.    Under the Supremacy Clause of the United States Constitution, "the activities of

22  the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S.

23  441, 445 (1943). State laws run afoul of intergovernmental immunity when they "involve[] a

24

25    [27] *See Yuba County Jail Suspending Visitation Due to COVID-19 Concerns*, YUBA CNTY. SHERIFF'S DEP'T (Dec. 16, 2020), https://bit.ly/3tMMi6q.

26    [28] Andrea Castillo, *Judge Largely Upholds California Ban on Private Prisons in Tentative Ruling*, L.A. TIMES (July 16, 2020 6:51 PM PT), https://lat.ms/3xhHfgr.

27    [29] Don Thompson & Amy Taxin, *California To End its Use of Private, For-Profit Prisons*, ASSOCIATED PRESS (Oct. 11, 2019), https://bit.ly/2Pgb6C6.

COMPLAINT - 13

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1   direct, physical interference with federal activities . . . or some direct, immediate burden on the

2   performance of the [federal] functions." *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 96 (1945).

3        66.    By prohibiting the use and operation of federal private detention facilities in the

4   State, and by applying that prohibition retroactively, EHB 1090 substantially interferes with

5   Federal Government operations.

6        67.    EHB 1090 substantially interferes with ICE's ability to carry out its detention

7   responsibilities for the Federal Government.

8        68.    Congress has not authorized the State to regulate the Federal Government's

9   activities with respect to federal detention facilities like GEO's.

10       69.    EHB 1090 is unconstitutional and invalid as applied to GEO's operations on behalf

11   of ICE.

12              **COUNT II: FEDERAL PREEMPTION OF INCONSISTENT STATE LAW**

13       70.    Plaintiff re-alleges and incorporates by reference the allegations of the preceding

14   paragraphs.

15       71.    Federal immigration law provides that the Secretary of Homeland Security "shall

16   arrange for appropriate places of detention for aliens detained pending removal or a decision on

17   removal," and "[w]hen United States facilities are unavailable or facilities adapted or suitably

18   located for detention are unavailable for rental, the [Secretary] may expend . . . amounts necessary

19   to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for

20   detention." 8 U.S.C. § 1231(g)(1). Congress has instructed that ICE "shall consider the availability

21   for purchase *or lease* of any existing prison, jail, detention center, or other comparable facility

22   suitable for [detention]" before beginning any project to develop a new detention facility. 8 U.S.C.

23   § 1231(g)(2) (emphasis added).

24       72.    In enacting Section 1231(g)(1), "Congress . . . placed the responsibility of

25   determining where aliens are detained within the discretion of the [Secretary]." *Comm. of Cent.*

26   *Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986). That discretion is "broad." *Id.*

27       73.    To effectively arrange for appropriate places of detention for removal aliens,

COMPLAINT - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1    Congress further granted the Secretary authority "to make contracts . . . as may be necessary and

2    proper to carry out [his] responsibilities," 6 U.S.C. § 112(b)(2), including contracts with private

3    parties.

4         74.    Congress further authorized the Secretary, in his "reasonable discretion," to carry

5    out the immigration enforcement activities of the Department of Homeland Security "through any

6    means," including "through contracts, grants, or cooperative agreements with non-Federal

7    parties." 28 U.S.C. § 530C(a)(4).

8         75.    Congress has also authorized the Secretary to "enter into contracts and other

9    agreements, of any reasonable duration, for detention or incarceration space or facilities, *including*

10   *related services, on any reasonable basis*." 18 U.S.C. § 4013 note "Contracts for Space or

11   Facilities" (emphasis added).

12        76.    Where Congress delegates broad discretion to an Executive Branch official to

13   achieve some end, state laws are preempted when they frustrate the natural effect of that delegation

14   and blunt the consequences of Executive acts taken pursuant to the delegation. *See Crosby v. Nat'l*

15   *Foreign Trade Council*, 530 U.S. 363, 372–377 (2000).

16        77.    State laws are also preempted whenever they evince a second-guessing of the

17   Federal Government's contracting choices made in conformity with enumerated congressional

18   standards. *See Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 438–41 (9th Cir. 1991).

19        78.    EHB 1090, by prohibiting the Secretary of Homeland Security from using private

20   detention facilities, overrides Congress' determination to grant him discretion to place federal

21   immigration detainees in private detention facilities and prohibits a means of federal detention that

22   Congress clearly authorized.

23        79.    EHB 1090 also impermissibly second-guesses the Federal Government's

24   contracting decisions by displacing the Federal Government's determination of what immigration

25   detention facilities are "appropriate," 8 U.S.C. § 1231(g)(1), and whether using private prisoner

26   detention facilities is "necessary and proper," 6 U.S.C. § 112(b)(2), or "reasonable," 28 U.S.C.

27   § 530C(a)(4).

COMPLAINT - 15

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1     80.     EHB 1090 is unconstitutional and invalid as applied to GEO's operations on behalf

2  of ICE.

3                    **COUNT III: VIOLATION OF THE CONTRACTS CLAUSE**

4     81.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding

5  paragraphs.

6     82.     Article 1, Section 10 of the United States Constitution expressly provides that "[n]o

7  State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."

8     83.     By retroactively prohibiting the January 29, 2021 modification to the Federal

9  Government's contract with GEO for NWIPC, EHB 1090 flatly prohibits the performance of—

10  and thus "impair[s]"—that contract.

11     84.     Courts have interpreted the Contracts Clause to invalidate a state law that has

12  "operated as a substantial impairment of a contractual relationship," unless that state law "is drawn

13  in an 'appropriate' and 'reasonable' way to advance a 'significant and legitimate public purpose.'"

14  *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018) (citations omitted).

15     85.     EHB 1090's cancellation of the Federal Government's contract with GEO for

16  NWIPC substantially impairs that contract because it wholly abrogates it, contrary to either party's

17  intent, in circumstances justifying strong reliance, without providing the parties means to avoid

18  the impairment. *Cf. id.* at 1822.

19     86.     Likewise, EHB 1090 neither appropriately nor reasonably advances its asserted

20  interests. *See* EHB 1090 § 1, Ch. 30, Laws of 2021, 67th Legis., 2021 Reg. Sess. (Apr. 14, 2021).

21     87.     It is inappropriate for state governments to try to control federal contracts as means

22  to achieving their ends.

23     88.     It is unreasonable for Washington to abrogate permanently the contract between the

24  Federal Government and GEO for the housing of federal immigration detainees by novel

25  legislation taking immediate, retroactive effect with a particularized impact on GEO and ICE,

26  notwithstanding GEO's investments and ICE's dependency on NWIPC as the only dedicated

27  facility available to house its detainees in the State of Washington, all while refusing to protect

COMPLAINT - 16

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1    from a supposedly general and pressing threat, whole categories of detainees, including juveniles,

2    disregarding their unique vulnerabilities.

3           89.    The unreasonableness of EHB 1090 is all the more apparent given that the

4    legislative findings in EHB 1090 speak only to concerns posed by private detention facilities

5    *nationally* but says nothing about NWIPC or any other Washington facility. *See* EHB 1090 § 1.

6    Therefore, Washington cannot reasonably assert that the operation of private detention facilities in

7    the State poses a uniquely troubling emergency justifying the immediate, retroactive nullification

8    of GEO's contract with ICE.

## PRAYER FOR RELIEF

10          WHEREFORE, The GEO Group, Inc., respectfully requests that this Court enter an order

11   and judgment:

12          a.     Declaring that Engrossed House Bill 1090 violates the Supremacy Clause and the

13                 Contracts Clause of the United States Constitution and is unconstitutional as

14                 applied to GEO in its operation of detention facilities for ICE;

15          b.     Preliminarily and permanently enjoining Defendants, as well as their successors,

16                 agents, employees, and all those under their supervision, from enforcing, whether

17                 prospectively or retroactively, Engrossed House Bill 1090 against GEO in its

18                 operation of detention facilities for ICE;

19          c.     Declaring that Plaintiff's current ICE contract with the Federal Government for the

20                 NWIPC is valid through September 27, 2025;

21          d.     Awarding attorneys' fees and costs as permitted by law; and

22          e.     Granting such other and further relief as this Court deems just and proper.

23   //

24   //

25   //

26   //

27   //

COMPLAINT - 17

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1       DATED this 29th day of April, 2021.

2

3                                     *Attorneys for Plaintiff The GEO Group, Inc.*

4                               By */s/ Harry Korrell*
                                  Harry J. F. Korrell, WSBA #23173

5                                   John G. Hodges-Howell, WSBA #42151
                                  Davis Wright Tremaine LLP

6                                   920 Fifth Avenue, Suite 3300
                                  Seattle, WA  98104-1610

7                                   Telephone: 206.622.3150
                                  Fax: 206.757.7700

8                                   E-mail: harrykorrell@dwt.com
                                  E-mail: jhodgeshowell@dwt.com

9

10                                   Charles J. Cooper,* D.C. Bar No. 248070
                                  Michael W. Kirk,* D.C. Bar No. 424648

11                                   Steven J. Lindsay,* D.C. Bar No. 1708507
                                  Tiernan Kane,* Ind. Bar No. 36452-71

12                                   COOPER & KIRK, PLLC
                                  1523 New Hampshire Avenue, NW

13                                   Washington, DC 20036
                                  Telephone: (202) 220-9600

14                                   Fax: (202) 220-9601
                                  Email: ccooper@cooperkirk.com

15                                   E-mail: mkirk@cooperkirk.com
                                  E-mail: slindsay@cooperkirk.com
                                  E-mail: tkane@cooperkirk.com

16

17                                   **Pro Hac Vice** Applications Forthcoming

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
920 Fifth Avenue, Ste. 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax