UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

|  |  |
|---|---|
| THE GEO GROUP, INC., | CASE NO. 3:21-cv-05313-BHS |
| Plaintiff, | ORDER |
| v. |  |
| JAY INSLEE, in his official capacity as the Governor of the State of Washington; and BOB FERGUSON, in his official capacity as the Attorney General of the State of Washington, |  |
| Defendants. |  |

This matter is before the Court on the GEO Group, Inc.'s motion for summary judgment, Dkt. 71, and the State of Washington's[1] cross-motion for summary judgment, Dkt. 72.

Pursuant to a contract with the United States Immigration and Customs Enforcement (ICE), GEO operates the Northwest ICE Processing Center (NWIPC)—a

---

[1] The defendants in this matter are Jay Inslee and Bob Ferguson, who are sued in their official capacities as Washington's Governor and Attorney General, respectively. Dkt. 1, ¶ 1. For simplicity, the Court refers to these defendants collectively as "the State of Washington."

ORDER - 1

private immigration detention facility located in Tacoma, Washington. GEO seeks a judgment declaring that RCW 70.395.030—a statute that generally prohibits the operation of private detention facilities in Washington—is unconstitutional as applied to GEO in its operation of the NWIPC or any other detention facilities that it may operate for ICE in the future. GEO also seeks to permanently enjoin the enforcement of this statute against GEO in its operation of any such facilities.

Although the State initially disputed GEO's arguments, it now concedes that, under the Ninth Circuit's intervening decision in *GEO Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), RCW 70.395.030 is unconstitutional as applied to the NWIPC. The State has accordingly committed to not enforce this statute against the NWIPC "as long as *Newsom* remains the law of the Ninth Circuit and as long as The GEO Group operates the NWIPC exclusively pursuant to a contract with ICE." Dkt. 65 at 2. The State asserts that, given this intervening caselaw and its resulting change in position, this case should be dismissed either for lack of standing or as moot.

The Court agrees that the State's change in position renders this case moot. Therefore, the State's cross-motion for summary judgment is granted and GEO's motion for summary judgment is denied.

**I.   BACKGROUND**

In 2021, the Washington Legislature passed Engrossed House Bill 1090 (now codified as RCW 70.395.030), which generally provides that "no person, business, or state or local governmental entity shall operate a private detention facility within the state or utilize a contract with a private detention facility within the state." RCW

70.395.030(1). The statute contains exceptions to this prohibition, *see* RCW 70.395.030(3)(a)–(h), but none of the enumerated exceptions apply to privately-operated immigration detention facilities like the NWIPC.

Subsection (2) of the statute provides that "[a] private detention facility that is operating pursuant to a valid contract with a governmental entity that was in effect prior to January 1, 2021, may remain in operation for the duration of that contract, not to include any extensions or modifications made to, or authorized by, that contract." RCW 70.395.030(2). The current contract between GEO and ICE was executed "on September 24, 2015, effective September 28, 2015, for a base period of one year." Dkt. 1, ¶ 52. "To extend beyond that period, the contract originally had nine options of one year each and one half-year option." *Id.* "ICE exercised its option five times, most recently on May 19, 2020, to extend the contract through September 27, 2021." *Id.* ¶ 53. Thus, under subsection (2), the earliest the State could have enforced RCW 70.395.030 against the NWIPC was when that option expired on September 28, 2021.[2]

In April 2021, before RCW 70.395.030 could even be enforced against the NWIPC under the statute's own terms, GEO sued, claiming that the statute, as applied to GEO's operation of the NWIPC, was preempted by federal law and otherwise violated the Supremacy Clause and Contract Clause of the United States Constitution. Dkt. 1, ¶¶ 63–89. GEO seeks (1) a declaratory judgment "that Engrossed House Bill 1090 violates

---

[2] On January 29, 2021, "ICE and GEO modified the contract, removing remaining unexercised option years, and establishing instead a five-year performance period running from September 28, 2020, through September 27, 2025." Dkt. 1, ¶ 53.

the Supremacy Clause and the Contracts Clause of the United States Constitution and is unconstitutional as applied to GEO in its operation of detention facilities for ICE," *id.* at 17, and (2) an injunction "[p]reliminarily and permanently enjoining [Governor Inslee and Attorney General Ferguson], as well as their successors, agents, employees, and all those under their supervision, from enforcing, whether prospectively or retroactively, Engrossed House Bill 1090 against GEO in its operation of detention facilities for ICE." *Id.*

GEO also moved for a preliminary injunction. Dkt. 8. The State opposed that motion, Dkt. 29, and moved to dismiss all of GEO's claims, asserting that RCW 70.395.030 was constitutional as applied to the NWIPC. Dkt. 28. The State also filed two counterclaims against GEO, claiming that GEO's continued operation of the NWIPC after September 27, 2021, violated both RCW 70.395.030 and Washington's Consumer Protection Act (CPA). Dkt. 55, ¶¶ 24–34. The State sought (1) a declaratory judgment that GEO's continued operation of the NWIPC violated these laws, (2) a permanent injunction enjoining GEO from operating the NWIPC, and (3) civil penalties and attorney fees and costs under the CPA. *Id.* ¶¶ 35–43.

The parties stipulated to stay these proceedings until after the Ninth Circuit resolved a related case, *GEO Group, Inc. v. Newsom*, No. 20-56172, in which GEO and the United States challenged the constitutionality of a similar California statute. *See* Dkt. 57. The Court stayed this case until the Ninth Circuit issued its mandate in *Newsom*.

The California statute, Assembly Bill (AB) 32, generally states that "a person shall not operate a private detention facility within [California]." Cal. Penal Code § 9501. In

*Newsom*, GEO and the United States sought to enjoin the enforcement of AB 32 against private detention facilities operated pursuant to a contract with ICE.[3] 50 F.4th 745, 752 (9th Cir. 2022) (en banc). The district court in that case "dismissed the United States and GEO's claims as to ICE-contracted facilities and denied the motion for a preliminary injunction as to those facilities because it found no likelihood of success on the merits." *Id.*

The Ninth Circuit vacated the district court's order, "hold[ing] that appellants are likely to prevail on their claim that AB 32 violates the Supremacy Clause as to ICE-contracted facilities." *Id.* at 763. The court reasoned that, as applied to such facilities, "AB 32 would override the federal government's decision, pursuant to discretion conferred by Congress, to use private contractors to run its immigration detention facilities." *Id.* at 750–51. The court explained, "Whether analyzed under intergovernmental immunity or preemption, California cannot exert this level of control over the federal government's detention operations." *Id.* at 751. The Ninth Circuit accordingly remanded the cause to the district court to consider the remaining factors relevant to the issuance of a preliminary injunction. *Id.* at 763.

After the Ninth Circuit issued its mandate in *Newsom*, GEO and the State agreed to extend the stay in this matter pending the conclusion of *Newsom* on remand. Dkt. 61. The parties in *Newsom* ultimately stipulated to the entry of a final judgment and

---

[3] In that case, GEO and the United States also moved for, and the district court granted, "preliminary injunctive relief as to facilities under contract with the United States Marshals Service." *Newsom*, 50 F.4th at 752, n.2. California did not appeal that decision. *Id.*

permanent injunction, *see* Dkts. 63, which essentially (1) declared AB 32 to be unconstitutional as applied to any person who operates a private detention facility pursuant to a contract with ICE or the U.S. Marshals Service; and (2) permanently enjoined the enforcement of AB 32 against any such persons. Dkt. 69-3.

The State subsequently filed a "notice and stipulation of enforcement position," conceding that "[t]he Ninth Circuit's decision in *GEO Group, Inc. v. Newsom*, 50 F.4th 745, 763 (2022) (en banc), forecloses [it] from enforcing RCW 70.395.030 against GEO for operating NWIPC as an 'ICE-contracted facility[y].'" Dkt. 65 at 2. The State also "stipulate[d] that [it] will not enforce RCW 70.395.030 against GEO for its operation of the NWIPC" "as long as *Newsom* remains the law of the Ninth Circuit and as long as The GEO Group operates the NWIPC exclusively pursuant to a contract with ICE." *Id.* The State also voluntarily dismissed with prejudice its counterclaims against GEO. Dkt. 68.

GEO now moves for summary judgment, asserting that it is entitled to the entry of a declaratory judgment and permanent injunction like the one entered by the district court in *Newsom*. Dkt. 71. The State opposes this motion and, in a cross-motion for summary judgment, contends that its "notice and stipulation of enforcement position" both divests GEO of standing and moots this case. Dkt. 72.

The parties' arguments are addressed below.

## II.  DISCUSSION

The first issue is whether, at this point in the proceedings, the dispute should be analyzed for lack of standing or for mootness. The State assumes that it should be analyzed for both. Dkt. 72 at 12–21. GEO responds that "[i]t is blackletter law that a

changed circumstance *after* the outset of a suit that allegedly affects the justiciability of the plaintiff's claim is analyzed under [the] mootness doctrine, not standing." Dkt. 74 at 7. GEO argues that "[t]his distinction is not academic" because, if analyzed for mootness, the State bears "an exceedingly heavy burden to show that a unilateral, voluntary cessation of unlawful conduct means this Court can no longer enter any meaningful relief." *Id.* The State retorts that "GEO is wrong" because "'[t]he party asserting federal jurisdiction' bears the burden to establish standing '*at every stage of the litigation*.'" Dkt. 75 at 6 (quoting *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010)).

"Article III of the United States Constitution limits federal court jurisdiction to 'actual, ongoing cases or controversies.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Accordingly, "[a] case or controversy must exist at all stages of review, not just at the time the action is filed." *Wolfson*, 616 F.3d at 1053 (citing *Alvarez v. Smith*, 558 U.S. 87 (2009)). The "case or controversy" clause requires, among other things, that a plaintiff have standing, that the plaintiff's claims be ripe for adjudication, and that the plaintiff's claims not be moot. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).

To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The existence of standing turns on the facts as they existed *at the time the plaintiff filed the complaint*." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir.

2007) (emphasis added). This requirement does not change simply because "[t]he party asserting federal jurisdiction bears the burden of establishing" standing "at every stage of the litigation." *Krottner*, 628 F.3d at 1141. "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction has the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal citation omitted) (citing *Lujan*, 504 U.S. at 561 (1992)).

By contrast, "[w]hether standing and the other requirements for a live case or controversy exist[] throughout the entirety of a case is considered under the doctrine of mootness." *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1081 (D. Or. 2021); *see also Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1253 (9th Cir. 2007) (under the mootness doctrine, "a live controversy must exist at all stages of the litigation, not simply at the time plaintiff filed the complaint"). "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome' of the litigation." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). "In other words, if events subsequent to the filing of the case resolve the parties' dispute, [the court] must dismiss the case as moot." *Id.* at 1087.

In this sense, "mootness [is] 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). Indeed, "[t]he

phrases 'legally cognizable interest' and 'injury in fact' are for all practical purposes synonymous," even though the former "is often used to describe Article III's case or controversy requirements when mootness is at issue" and the latter "is often used to discuss these requirements when standing is at issue." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 n.7 (9th Cir. 2001).

For these reasons, the Court analyzes this case for mootness, not for lack of standing. In so doing, the Court is cognizant that "[t]he doctrine of mootness is more complex . . . than simply 'standing set in a time frame,' because it has exceptions that do not apply to standing and because there may be circumstances in which certain factors are viewed more flexibly in considering mootness than they would be in considering standing." *Wolfe*, 566 F. Supp. 3d at 1082.

Both GEO and the State assume that one such exception to mootness—the voluntary cessation exception—is relevant to this case. *See* Dkt. 71 at 6, 9; Dkt. 72 at 19; Dkt. 74 at 7–9, 11–13; Dkt 75 at 10–11. Under this exception, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.*

To address this concern, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv's (TOC), Inc.*, 528 U.S. 167, 190 (2000). Put

differently, such a defendant bears a "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again."[4] *Id.* at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

The voluntary cessation analysis is not applicable to this case. That analysis applies when a defendant *ceases* to engage in allegedly improper conduct. *See Laidlaw*, 528 U.S. at 189–90 (to establish mootness, a defendant who voluntarily ceases the challenged conduct must show that the conduct "could not reasonably be expected to *recur*" or "start up *again*" (Emphasis added)). Yet the State has *never* enforced RCW 70.395.030 against the NWIPC. To the contrary, when GEO filed this lawsuit in April 2021, it acknowledged that, under the statute's own terms, the State would not be able to enforce the statute against the NWIPC until September 27, 2021, at the earliest. *See* Dkt. 1, ¶¶ 53, 60; Dkt. 8 at 24. Because the State has never engaged in the conduct that GEO seeks to prevent, the voluntary cessation analysis is inapplicable.

But even if it were applicable, it would not defeat mootness. "'[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.'" *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)). Specifically, "unlike in the case of a private party, [courts]

---

[4] This standard differs significantly from the standard applied when determining whether a plaintiff had standing when a lawsuit commenced: "[I]n a lawsuit brought to force compliance, it is the *plaintiff's* burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior *will likely occur or continue*, and that the 'threatened injury [is] *certainly impending*.'" *Laidlaw*, 528 U.S. at 190 (emphasis added) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

presume the government is acting in good faith." *Am. Cargo Transp.*, 625 F.3d at 1180. There is no evidence in the record to rebut this presumption.

In any event, rather than voluntarily ceasing any conduct, the State has conceded that "[t]he Ninth Circuit's decision in *GEO Group, Inc. v. Newsom*, 50 F.4th 745, 763 (2022) (en banc), forecloses [the State] from enforcing RCW 70.395.030 against GEO for operating NWIPC as an 'ICE-contracted facility[y]'" *in the first instance*. Dkt. 65 at 2. The State has committed that, "as long as *Newsom* remains the law of the Ninth Circuit and as long as The GEO Group operates the NWIPC exclusively pursuant to a contract with ICE, . . . [the State] will not enforce RCW 70.395.030 against GEO for its operation of the NWIPC." *Id.*

"If an action or a claim loses its character as a live controversy, then the action or claim becomes 'moot,' and [the court] lack[s] jurisdiction to resolve the underlying dispute." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798–99 (9th Cir. 1999). "Whether a live controversy exists depends on whether [the court] can grant *effective* relief 'in the event that [it] decide[s] the matter on the merits.'" *Indep. Living Ctr. of S. California, Inc. v. Maxwell-Jolly*, 590 F.3d 725, 727 (9th Cir. 2009) (emphasis added) (quoting *NASD Dispute Resolution, Inc. v. Judicial Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007)). "A change in [controlling] case law coupled with evidence of [a defendant]'s compliance with that case law is an interim event that precludes further legal violations." *Cook v. Brown*, 364 F. Supp. 3d 1184, 1189 (D. Or. 2019), *aff'd*, 845 F. App'x 671 (9th Cir. 2021). "While changes in the law resulting from executive action can be reversed with relative ease, a reversal of [controlling] precedent is analogous to a

1 statutory change that 'bespeaks finality' and is not a change that could easily be altered."

2 *Id.*

3 The Ninth Circuit's decision in *Newsom*, 50 F.4th 745, paired with the State's concession that *Newsom* precludes enforcement of RCW 70.395.030 against the NWIPC effectively gives GEO the relief that it seeks in this action. Under these circumstances, the Court cannot grant GEO any effective relief. Therefore, this case is moot.

GEO argues that the State's notice does not render this case moot because it does not bind Governor Inslee's or Attorney General Ferguson's successors in office or "any other current or future actors who may also seek to enforce [RCW 70.395.030] against GEO." Dkt. 71 at 10. Although it is *possible* that Inslee's or Ferguson's successors in office could attempt to enforce this statute against the NWIPC, it is not reasonably expected to occur when the State agrees that, in a parallel lawsuit, the Ninth Circuit has effectively decided the issue before this Court in GEO's favor. Because the State acknowledges that the Ninth Circuit's holding in *Newsom* prevents it from enforcing RCW 70.395.030 against the NWIPC, this Court will not speculate as to whether any future state actor might nevertheless decide otherwise. *See Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021) ("Simply put, speculative suppositions, far-fetched fears, or remote possibilities of recurrence cannot overcome mootness."). Any such claim against hypothetical future actors is similarly not ripe for consideration. *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014) ("The ripeness doctrine seeks to identify those matters that are premature for judicial review

1  because the injury at issue is speculative, or may never occur."). Therefore, this argument
2  fails.

3  GEO also complains that, under the State's notice, "nothing would prevent [the
4  State] from later enforcing [RCW 70.395.030] against GEO" (1) "if [the State] believed
5  (wrongly) that *Newsom* was no longer 'the law of the Ninth Circuit,'" (2) "if GEO
6  contracted with another federal agency (such as U.S. Marshals) to operate NWIPC," or
7  (3) "if GEO began operating a facility in the State other than NWIPC." Dkt. 71 at 6
8  (internal citation and footnote omitted). But all these concerns are also too speculative
9  and remote to overcome mootness. *See Lund v. Cowan*, 5 F.4th at 969. They are also not
10 ripe for consideration. *See Protectmarriage.com*, 752 F.3d at 838.

11 Finally, GEO's specific concern that the State may seek to prevent it from
12 operating a detention facility under a contract with the U.S. Marshals Service is
13 unfounded. Aside from the fact that GEO does not seek this relief in its complaint,[5] RCW
14 70.395.030 expressly excludes from its ambit "[f]acilit[ies] used to house persons
15 pursuant to 18 U.S.C. Sec. 4013," which, in turn, authorizes the U.S. Marshals Service to
16 contract with private detention entities. *See* 18 U.S.C. § 4013(c).

17 For all these reasons, this case is moot. GEO is accordingly not entitled to the
18 entry of either a declaratory judgment or a permanent injunction.

---

[5] GEO's complaint challenges RCW 70.395.030 as applied to "its operation of detention facilities for ICE." Dkt. 1 at 17. It does not challenge the law as it applies to any detention facility that it may operate under a contract with the U.S. Marshals Service.

ORDER - 13

## III. ORDER

Therefore, it is hereby **ORDERED** that the State's cross-motion for summary judgment, Dkt. 72, is **GRANTED**, and GEO's motion for summary judgment, Dkt. 71, is **DENIED**. All of GEO's claims are **DISMISSED without prejudice** and **without leave to amend**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 16th day of November, 2023.

BENJAMIN H. SETTLE
United States District Judge